UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TENISHA YOUNG,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 19-cv-03616-RMI<br><br>**ORDER**<br><br>Re: Dkt. Nos. 18, 24 |

Plaintiff, Tenisha Young, seeks judicial review of an administrative law judge ("ALJ") decision denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 9 & 11), both parties have moved for summary judgment (dkts. 18 & 24), and both parties seek a remand to the ALJ. While Plaintiff seeks remand for the immediate calculation and payment of benefits, Defendant seeks an order remanding the case for further proceedings. For the reasons stated below, the court will remand the case for further proceedings.

**LEGAL STANDARDS**

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1169 (9th Cir. 2008). A district court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful

purpose." *Smolen v. Chater*, 80 F.3d 173, 1292 (9th Cir. 1996). Specifically, the Court of Appeals for the Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an immediate award of benefits would be appropriate when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and, (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. The second and third prongs of the test often merge into a single question; that is, whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id*. at 1178 n.2; *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (when all three conditions of the credit-as-true rule are satisfied, and a careful review of the record discloses no reason to seriously doubt that a claimant is, in fact, disabled, a remand for a calculation and award of benefits is required).

**DISCUSSION**

Plaintiff filed applications for disability insurance benefits and supplemental security income, on August 31, 2015 and October 31, 2015, respectively, alleging an onset date of December 1, 2013, as to both applications. *See* Administrative Record "*AR*" at 19.[1] The ALJ denied Plaintiff's applications on April 5, 2018. *Id*. at 31. The Appeals Council denied Plaintiff's request for review on April 19, 2019. *Id*. at 1-4. Thereafter, Plaintiff sought review in this court.

Plaintiff now raises four issues and contends: that the ALJ erred at Step One in determining whether Plaintiff had engaged in substantial gainful activity since her alleged onset date; that the ALJ erred at Step Two by concluding that Plaintiff's posttraumatic stress disorder ("PTSD") was non-severe; that the ALJ erred in determining that Plaintiff's symptom testimony was not consistent with the medical evidence; and, that the ALJ erred in evaluating the opinion evidence by giving greater weight to the opinions of non-examining doctors while rejecting the opinion of Plaintiff's treating sources. *See* Pl.'s Mot. (dkt. 18) at 7-17. Consequently, Plaintiff

---

[1] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #13. *See* (dkts. 13-1 through 13-18).

2

initially requested a reversal and remand for calculation and payment of benefits, or in the alternative, a remand for further proceedings. *Id*. at 18-19. In response, Defendant confesses error and "concedes that the ALJ improperly determined that Plaintiff had no severe impairments prior to October 1, 2016 merely because of her work activity . . . [and] requests that this Court issue an order remanding this case to enable the Commissioner to properly consider: (1) whether Plaintiff performed work activity in 2015 under "special conditions"; (2) whether the work activity she performed in 2016 constituted an "unsuccessful work attempt"; and (3) whether Plaintiff had a severe impairment for the entire period at issue . . . [and, that on remand] [t]he ALJ will give Plaintiff the opportunity for a new hearing whereupon she may raise any other issues she sees fit." *See* Def.'s Mot. (dkt. 24) 3-4.[2]

Defendant maintains that remanding for an immediate payment of benefits is premature and inconsistent with the applicable legal standards due to the nature of the ALJ's errors which render the record incomplete. *Id*. at 5. In this regard, Defendant submits that the ALJ rendered "an incomplete analysis at Step One . . . [and that] it remains unknown whether Plaintiff performed substantial gainful activity during the alleged period of disability because the ALJ did not evaluate whether the three-month period in 2016 constituted an unsuccessful work attempt, or whether Plaintiff's eight-month period of work activity in 2015 was performed under "special circumstances." *Id*. Defendant adds that "[w]ithout knowing what time period is at issue, or whether Plaintiff had severe impairments prior to October 1, 2016, none of the medical opinions or Plaintiff's statements can be 'credited.'" *Id*. at 5-6. As to Plaintiff's "work activity and motivation" Defendant contends that the record is replete with inconsistencies that require further administrative proceedings and that render it unclear whether or not Plaintiff is, in fact, disabled. By way of example, Defendant points to the following: that Plaintiff told one treatment provider that she simply did not want to work anymore; that she told another treatment provider that she was committed to securing supplemental security income and that she only intended to work as needed until her application for benefits was approved; that she stopped working at Home Depot

---

[2] The court appreciates the candor and insight provided by Defendant's counsel in this matter.

3

because of her own chronic tardiness and because she disliked the store's promotional and marketing practices; that she alleged suffering from extreme difficulty in engaging in social activities while attending college classes on a part time basis and also enrolling in a massage therapy class consisting of two full days of classes per week. *Id*. at 6-7. In short, Defendant submits that "the record here is not fully developed and contains significant outstanding issues." *Id*. at 7.

A review of the administrative record bears out Defendant's concerns about the incompleteness of the record and the existence of ambiguity as to whether or not Plaintiff has in fact been disabled during the relevant time period in question – thus, highlighting the utility of further administrative proceedings. For example, in mid-November of 2015, Plaintiff was reported to have told her treatment provider at Alameda County Behavioral Care Services that she was "contemplating part-time work, noting that she feels she . . . may be able to work part-time." *See AR* at 875-76. Several months later, in mid-March of 2016, Plaintiff was reported to have told the same treatment provider that she only wanted to keep working "as needed" until such time as her application for supplemental security income would be approved, while asking her treatment provider if he might be able to help her figure out "what works best for her." *Id*. at 906-07. Two months later, Plaintiff was reported to have told another treatment provider that she had been hired to work at the Oakland Coliseum but that her schedule was sporadic because the work schedule was determined by seniority; and, that Plaintiff was hopeful about attending massage therapist classes due to the availability of state funding for such vocational training. *Id*. at 937-38. Then, in June of 2016, Plaintiff reported to another treatment provider that she was dissatisfied with her employment at the time due to Home Depot's policies regarding the marketing and promotion of Home Depot credit cards. *Id*. at 949-50.

In arguing that the case is ripe for an award of benefits, Plaintiff mainly focuses on the incorrectness of the weight given by the ALJ to the opinions of Dr. Lisa Kalich and Dr. Aislinn Bird, both of whom had expressed some doubt about Plaintiff's ability to function in the workplace. *See* Pl.'s Mot. (dkt. 18) at 16-18. While Plaintiff contends that further administrative proceedings would serve no useful purpose, and that there are no outstanding issues that require

4

further exploration, Plaintiff does not actually address any of the record-based inconsistencies raised here by Defendant. *See generally* Pl.'s Reply Br. (dkt. 25) at 2-4. Nevertheless, Plaintiff submits that if the evidence that was rejected by the ALJ were to be credited as true, then Plaintiff would be found disabled. *Id*. at 4. While Plaintiff relies heavily on the opinions expressed by Drs. Bird and Kalich, Plaintiff's briefing failed to actually cite to the specific pages of the administrative record where those opinions may be found. *See generally* Pl.'s Mot. (dkt. 18); and, Pl.'s Reply Br. (dkt. 25). Nevertheless, the court's independent review of the entirety of the 1014-page administrative record led to the eventual discovery of Dr. Kalich's report of Plaintiff's psychological evaluation of December 21, 2015 (*see AR* at 599-605), as well as the records relating to Plaintiff's treatment by Dr. Bird (*see AR* at 37-100).

Turning to the details of Dr. Kalich's assessment of Plaintiff's work-related abilities, the court finds that her opinion is far from conclusive and that, even if it were credited as true, the court cannot conclude that further administrative proceedings would serve no useful purpose. Initially, Dr. Kalich noted that her "[c]linical interview and test data *suggest* that Ms. Young *likely* experiences severe impairment with regard to activities of daily living." *Id*. at 604. (emphasis added). Dr. Kalich then noted that Plaintiff's "anxiety *may* also contribute to her brushing her teeth with the bathroom cleaner, Comet, and . . . [g]iven the severity of Ms. Young's current symptoms, it is *unlikely* that she could maintain regular work attendance for a sustained length of time." *Id*. (emphases added). Dr. Kalich also opined that Plaintiff demonstrated "no significant impairment with regard to abilities involving concentration and sustained attention . . . [but that she] *may* experience moderate deficits in persistence and pace of work." *Id*. at 605 (emphasis added). Lastly, noting that Plaintiff had participated in treatment on an intermittent basis for some years "with mixed compliance and commitment," Dr. Kalich opined that "[w]ith regular compliance, her symptoms *may* improve." *Id*. (emphasis added). Thus, contrary to Plaintiff's suggestion, the equivocating and uncertain manner in which Dr. Kalich rendered her opinion is not one on which a disability finding can be based under the credit-as-true doctrine. Instead, the court finds that further administrative proceedings would be useful such that the ALJ can either subpoena Dr. Kalich, or otherwise communicate with her, in order to answer some of the many

1  questions that arise from her opinions.

2        Turning to Plaintiff's reliance on Dr. Bird's opinion, once again, a number of factors
3  prevent the court from concluding that further administrative proceedings would serve no useful
4  purpose. First, Plaintiff's treatment records with Dr. Bird are such that a particular paragraph, that
5  appears to have been entered into Plaintiff's medical records in November of 2017, appears to be
6  repeated, verbatim, throughout no fewer than nine separate records of visits with Dr. Bird ranging
7  from November of 2017 until January of 2019. *See AR* at 37-43, 51-55, 63-69, 74-77, 81-84, 93-
8  100. Because of the rote and verbatim manner in which the same exact paragraph is repeated
9  throughout these records, it appears to the court that the information may have been entered into a
10 computer program in November of 2017, and thereafter the same paragraph would automatically
11 appear in the records of each of Plaintiff's future visits. *See id*. at 39, 43, 54, 65, 69, 76, 83, 95, 99
12 (wherein the same exact expression of an opinion appears, verbatim, in the records of nine
13 separate treatment sessions during a period of more than one year, to wit, Dr. Bird's opinion that,
14 "[g]iven her severe PTSD [symptoms], which interferes (sic) with her ability to concentrate,
15 manage stress, organize tasks or keep pace, I do not expect her to be able to maintain gainful
16 employment."). In this regard, quite apart from the fact that Dr. Kalich and Dr. Bird appear to
17 disagree regarding Plaintiff's ability to maintain concentration; the court finds that further
18 administrative proceedings would indeed be useful such that the ALJ can subpoena, or otherwise
19 contact, Dr. Bird if only to inquire about the continued validity of this opinion statement.

20       Second, the sustained viability of Dr. Bird's opinion as to Plaintiff's inability to work due
21 to her PTSD symptoms becomes the subject of further confusion in those same treatment records,
22 where the above-described and oft-repeated statement appears alongside other statements that, at
23 least, gives rise to some doubt about whether or not Plaintiff is, in fact, disabled. For example,
24 during a treatment session in December of 2017, Dr. Bird also noted that Plaintiff's progress in
25 "[m]assage school is going well, although she is finding it more difficult to concentrate given an
26 increase in anxiety." *Id*. at 38. During a treatment session in September of 2018, Dr. Bird noted
27 that she "[c]ongratulated [Plaintiff] for completing her school work and becoming a massage
28 therapist," while noting that it was unclear if Plaintiff would be able to actually work as a massage

therapist given her anxiety and PTSD symptoms. *Id*. at 82. Two months later, in the course of a treatment session in November of 2018, Dr. Bird noted that Plaintiff was engaged or employed as a teaching assistant at her massage school. *Id*. at 75. Then, adding further to the confusion that is manifest in this record, in the course of a treatment session in January of 2019, Dr. Bird noted that Plaintiff "is still working towards obtaining her massage therapist license," despite the fact that she is "[c]ontinuing to isolate herself at home." *Id*. at 65.

Accordingly, remand for an immediate award of benefits is not possible on this record because the court is unable to conclude that further administrative proceedings would serve no useful purpose, and also because the court is unable to conclude with any degree of confidence that a review of the record gives rise to no serious doubts that Plaintiff is in fact disabled. Given that the record in this case was poorly developed, remand for further proceedings is unavoidable; however, it should also be noted that there are limits to the ordinary remand rule and the Commissioner will not have endless opportunities in hopes of one day getting it right. To conclude otherwise would give rise to "an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *see also Rustamova v. Colvin*, 111 F. Supp. 3d 1156, 1165 (D. Or. 2015).

On remand, the Commissioner should note that it is well established that "[t]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001). In other words, the ALJ is instructed to scrupulously and conscientiously probe into the matter and actively explore for any and all relevant facts, not just the facts that might fit the rubric of a chosen end result. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citing *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). Thus, if there is any ambiguity in the evidence (such as the ambiguities discussed above), or if the ALJ – or a reviewing court – finds that the record is inadequate for proper evaluation of the evidence, such a finding likewise triggers the ALJ's duty to conduct an appropriate inquiry. *See Tonapetyan*, 242 F.3d at 1151 (citing *Smolen*, 80 F.3d at 1288). The existence of this duty to develop the record on the ALJ's part does not depend on a claimant's representation status and the duty applies with equal force in the cases

of the represented as well as the unrepresented claimant. *Tonapetyan* at 1150. However, in cases where the claimant may be mentally ill and unable to protect her own interests, as is the case here, the ALJ's duty to develop the record in a fair and unbiased manner is heightened. *Id*. (citing *Higbee*, 975 F.2d at 562); *see also DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1990) ("In cases of mental impairments, this duty [to develop the record] is especially important."); *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (a claimant need only "raise a suspicion" about his or her impairment in order to trigger the ALJ's duty to develop the record).

## CONCLUSION

Accordingly, as discussed above, Plaintiff's Motion for Summary Judgment (dkt. 18) is **GRANTED in part** and **DENIED in part**, and Defendants Motion for Remand (dkt. 24) is **GRANTED**. The case is remanded for further proceedings in light of the guidance provided herein.

**IT IS SO ORDERED.**

Dated: June 1, 2020

ROBERT M. ILLMAN
United States Magistrate Judge